McDONALD *et al. v.* McDONALD *et al.*

No. 10502.   JULY 10, 1935.

*A. M. Kelly* and *Clifford Pratt,* for plaintiffs.
*Roberts & Roberts,* for defendants.

BECK, Presiding Justice.   Mrs. Effie McDonald, as temporary administratrix of the estate of Leslie G. McDonald, brought an equitable petition against Eula P. McDonald and others.   The controlling issue in this case was whether or not a settlement which had been reached concerning funds, the proceeds of certain war insurance, had been procured by fraud on the part of the defendants. The issue between plaintiff and defendants was as to whom the money in the hands of the administratrix belonged.   A settlement of this issue, as stated above, was reached.   In her petition the plaintiff charges that the defendants formed a scheme and conspiracy to "cheat, swindle, and defraud petitioner out of her just rights, and to obtain money through false and fraudulent representations and threats and through duress;" that there was no consideration whatever for her turning the money over to the parties to whom she delivered it; and that under the facts which are fully

set forth in the petition the defendants should be enjoined and restrained from cashing checks which they had received, or from spending or using any of the money that they now have on hand as proceeds of the $5000 paid over, and that plaintiff have damages against the defendants in the sum of $5000. Upon the trial of the case evidence was introduced by both parties, and the judge charged the jury as to the controlling issue. He instructed them that he would submit to them a question, and that their answer to it would be decisive of the case. The question submitted by the court is this: "Was Mrs. Effie McDonald induced to settle the case in Gwinnett County, and turn over the money in question to R. A. Hartley and Eula McDonald, by their fraud, coercion, threats, or intimidation?" The court then added: "Now if you believe that she was induced to turn the money over to settle the case, as she contends, by threats, coercion, fraud, or intimidation by Eula McDonald and R. A. Hartley, as contended for here, you would answer that question, 'Yes.' On the other hand, if she was not induced by threats, coercion, or intimidation to make the settlement, but if she did it freely and voluntarily, why then you would answer that question, 'No.'" The answer returned by the jury to this question was "No." The plaintiff's motion for new trial was overruled, and she excepted.

The following evidence (fourth ground of the motion) was duly objected to as irrelevant, immaterial, and prejudicial, and exception is taken to its admission over the objection: "The first wife of L. G. McDonald filed a petition in the court of ordinary to see whether she was entitled to this money going to the estate of L. G. McDonald. The first wife did not appear, but some lawyer appeared. I could not tell you where he came from. That was L. G. McDonald's first wife intervening in my court. That petition was withdrawn before it came to trial, but was filed in my office, and is here, and was a part of the record in that court. This was an application by William Freeman as attorney for Mrs. Zelma McDonald, his first wife." The court did not err in admitting this evidence. The plaintiff based her claim to recover the money from the defendants on the ground that the settlement of the controversy had been obtained by fraud, coercion, and duress on the part of the defendants; and the fact that this plaintiff had had a controversy as to these funds with another party could be considered

by the jury in determining whether or not the state of mind that led her to consent to the settlement had been brought about by the controversy with other parties as to these funds, or whether it was induced by the misrepresentations and fraud of the defendants. The facts referred to in the evidence objected to may be very slight in their probative value; but the jury had the right to consider the state of mind of the plaintiff when the defendants entered into negotiations with her for a settlement, and the court properly admitted this evidence to throw light upon that question.

For similar reasons the court did not err in admitting the following evidence (fifth ground): "Q. You and Dr. Sewell had talked about it, and he advised you to settle? A. Yes, Dr. Sewell told me it was better. He didn't advise me to go to Griffin. He advised me rather than lose $30 a month and go to the penitentiary to give them this money." This evidence was in answer to a question propounded to the plaintiff. If the advice of the Dr. Sewell referred to in this evidence was influential in leading the plaintiff to a settlement and in inducing her to make it, then that could be considered by the jury in passing upon the question as to whether it was fraud and false statements of the defendants that brought about the settlement which the plaintiff is seeking to have set aside. The same ruling is applicable to the evidence contained in the sixth ground of the motion. Likewise the evidence the admission of which is assigned as error in the seventh ground may throw some light upon the question of the plaintiff's motive, independently of any fraud upon the part of the defendants. Likewise evidence of the marriage of Leslie G. McDonald to another woman (ground eight) was admissible as a part of the history of the plaintiff's relation to the fund in question, and to show that she had reason to desire to get rid of the entire matter. And the same may be said of the evidence relating to the marriage and divorce of Leslie G. McDonald, upon the admission of which error is assigned in other grounds.

But the reasons given for holding that it was not error for the court to admit the evidence referred to above do not apply to the admission of the following evidence: "The understanding of our family was—I understood he [Leslie G. McDonald] had a divorce. When she got one, that gave him one. I found out that he didn't have a divorce along about the time this matter came

up." This evidence was objected to upon the ground that there was higher and better evidence to show a divorce or a lack of divorce; that this evidence rests on hearsay; that it is a conclusion and opinion, and that it is a statement of a legal conclusion without any ground on which to base the same; and that it is irrelevant, immaterial, and prejudicial. This testimony was given on direct examination of one of the defendants. The objection that there was higher and better evidence of a divorce or lack of a divorce was in itself sufficient to exclude it. While if no divorce had been obtained there would not be any record, nevertheless the witness, before stating that there had been no divorce, should have shown what records he examined to see if there had been divorce proceedings, and that these records were the ones in which would have been found the evidence of a divorce if there had been one; and the statement that "I found out that he didn't have a divorce along about the time this came up," was a mere conclusion of the witness, and being objected to upon that ground, it was error to admit it.

The rulings stated in headnotes 3 to 10, inclusive, require no elaboration. The exceptions not specifically noted do not require a different ruling.

*Judgment reversed. All the Justices concur, except Atkinson, J., who dissents, and Gilbert, J., absent.*

RUSSELL, C. J., and HUTCHESON, J., concur specially.

RUSSELL, Chief Justice, concurring specially. I agree to the judgment of reversal and to the rulings in headnotes 2, 3, 4, 5, 6, and 9; but I can not concur in the ruling in headnote 1. The controlling issue in this case being whether the petitioner had been induced by fraud, threats, and duress to surrender her rightful possession of certain sums of money belonging to her as sole heir at law of her husband, L. G. McDonald, the court erred in admitting evidence as to the fact that at some undisclosed period of time another person had filed an application for letters of administration, which was dismissed; it not appearing that the plaintiff in this case was in any way connected with the dismissal of the case or procured the same to be done, especially since it appeared that the supposed petitioner for administration of the estate of the plaintiff's husband was not shown to have ever appeared except through an attorney.

The evidence set out in ground 5 of the motion for new trial was improperly admitted over the objection. What Dr. Sewell said was hearsay; and furthermore the fact that the plaintiff had been advised to make a settlement for reasons stated by Dr. Sewell could only submit to the jury, as a matter of speculative inquiry, the theory that if the plaintiff made the settlement which she now seeks to set aside, it was a compromise upon the part of the plaintiff upon grossly inadequate consideration, or without any consideration. It is plain from the pleadings and the evidence that the bare, naked question is whether the petitioner, as she alleges, was induced through duress, etc., to surrender possession of the funds in her hands. If so, she is entitled to recover. If it can be shown that in the transaction involved she consented, of her own free will, to surrender a portion of her inheritance from her husband, the proceeding would be so unnatural and so unreasonable that the evidence upon that point must be clear, direct, and explicit. For the same reasons, the evidence objected to in ground 6 of the motion for new trial should have been excluded.

I do not concur in headnote 7, for the reason that in my opinion the pleadings and the evidence are such as involve the question whether the funds in litigation were trust funds; and in view of the statement approved by the court, to which this headnote refers, that this was one of the contentions of movant on the trial of the case, the attention of the jury should have been directed thereto and the jury properly instructed upon that subject.

I can not concur in headnote 8, to the effect that a written request was required in order to put the jury in possession of the legal proposition that an attempt to withdraw in vacation an appeal from the judgment of the court of ordinary is a nullity (*Rasberry* v. *Harville*, 90 *Ga.* 530, 16 S. E. 299), and that if an appeal is withdrawn the rights of all the parties are the same as if no appeal had been entered (Code of 1933, § 6-502), and that no person shall be allowed to withdraw an appeal after entering one, but by the consent of the adverse party (§ 6-503). The attempted withdrawal of the plea is to my mind so interlocked with the evidence adduced by the plaintiff in support of her case as to evidence both fraud and duress, and to strongly support an affirmative, rather than a negative, answer to the question propounded by the court.

I do not concur in headnote 10, because, when the court charged that "the burden of proof is on the plaintiff in this case to prove her contentions, and she must carry that burden by a preponderance of the evidence," the instruction should have been qualified, at least in some way, by charging the jury that proof of a ceremonial marriage followed by cohabitation is presumptively valid, and the burden of proving its invalidity is upon the party who asserts that it is void or invalid. *Murchison* v. *Green,* 128 *Ga.* ·339 (2) (57 S. E. 709, 11 L. R. A. (N. S.) 702); *Brown* v. *Parks,* 173 *Ga.* 228 (160 S. E. 238), and cit. See also note to Smith v. Fuller, 16 L. R. A. (N. S.) 98 (138 Iowa 91, 115 N. W. 912), cited by Justice Atkinson in *Green* v. *Scurry,* 134 *Ga.* 482 (3) (68 S. E. 77). Mr. Justice Hutcheson joins in this special concurrence.