131 So.2d 696

**Fred JORDAN**

v.

**Monette COPELAND.**

I Div. 819.

Supreme Court of Alabama.

June 22, 1961.

Edw. P. Turner, Jr., Chatom, for appellant.

Grady W. Hurst, Jr., Chatom, for appellee.

COLEMAN, Justice.

This is an appeal from a decree denying a petition to remove the administration of an estate from the probate court to the circuit court in equity.

The petitioner for removal, Fred Jordan, the appellant, asserts that he is the husband of Armina Jordan, deceased; that her will has been admitted to probate; and that appellee, Monette Copeland, has applied for letters testamentary as executrix of the will.

The appellee asserts that testatrix was the wife of Arthur Stevens at the time of her purported marriage to appellant and that the prior marriage of Stevens to testatrix had not been dissolved at the time of her death. Appellee concludes, therefore, that appellant was not the husband of testatrix and has no such interest in her estate as would entitle him to remove the administration to the circuit court under § 139, Title 13, Code 1940.

After hearing testimony ore tenus, the court found that appellant was not the husband of testatrix, because her marriage to Stevens had not been dissolved, and denied the removal petition.

Appellant insists that the court erred in finding from the evidence that appellee had sustained the burden of proof that rested on her to show that the marriage of testatrix to Arthur Stevens had not been dissolved.

■ The evidence shows a ceremonial marriage of testatrix to appellant in Washington County on May 24, 1944. This is the last marriage of testatrix shown by the evidence. The evidence also showed a prior marriage of testatrix to Arthur Stevens and that he was living after the death of testatrix. He testified as a witness. The appellee asserts the invalidity of the last marriage of testatrix, that is, her marriage to appellant. The presumption is that the prior marriage has been dissolved by divorce, and the burden to show that it has not been dissolved rests upon the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Ex parte Young, 211 Ala. 508, 101 So. 51; Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46; Freed v. Sallade, 245 Ala. 505, 17 So.2d 868; Jordan v. Courtney, 248 Ala. 390, 27 So.2d 783. So, the question presented on this appeal is whether or not the evidence is sufficient to support the finding that the marriage of testatrix and Arthur Stevens had not been dissolved by divorce.

■ The presumption of an innocent second marriage is overcome when the circumstances require a reasonable inference to the contrary. Freed v. Sallade, supra.

The circumstances shown by the evidence are as follows: Arthur Stevens testified that he married testatrix in Waynesboro, Mississippi, but had forgotten the date. A marriage certificate purporting to have been executed by the clerk of the Circuit Court of Wayne County, Mississippi, was admitted in evidence over appellant's objection. The certificate states that Stevens and "Miss Areminer Phillips" were married March 26, 1916. Stevens testified that he and testatrix had three children; that they separated in 1931 or 1932; that they were never divorced; that in 1936 he, Stevens, filed suit in Memphis, Tennessee, for a divorce but "left it" with his lawyer, "Charlie," who sent Stevens "an affidavit" when he "came back to Mississippi"; and that he never got a divorce in that proceeding and never filed any other proceeding for divorce. Stevens further said the contents of the affidavit were "The same as a divorce as I understand it," and that he lost the affidavit when he left it in Vicksburg in 1938. Stevens said also that he had not lived with testatrix since 1936, and that he now has a wife in Florida where he was living at the time of the trial. A certificate by the ordinary of Lowndes County, Georgia, showing the marriage of "Srthur Stevens" to Callie Guynn on March 7, 1948, was received in evidence without objection. Stevens further said he did not know whether testatrix had ever obtained a divorce from him or not, that he did not know where she had lived, and that he "would hear from her along from the children." Stevens testified that he was served with process in a divorce proceeding instituted by testatrix in Waynesboro, Mississippi. It is not clear whether he was served with that process in Waynesboro or elsewhere. He said he was living in Alabama at that time and that he did not know the disposition of that case. Stevens said he did not know whether testatrix had ever obtained a divorce from him or not, and that when he married Callie Guynn "I believed I was free to marry, yes, or I would not have married."

A certificate, by the Judge of Probate of Washington County, stating that the records of his office show that Walter Wright and "Armenta" Phillips were married May 30, 1936, was introduced in evidence. A showing was admitted that Walter Wright would testify that he was married to testatrix, that he knew nothing of any divorce that she got from Stevens, and that as far as Wright knew she never had a divorce from Stevens. It was stipulated that Walter Wright was married to testatrix and divorced from her by decree of the Circuit Court of Washington County, but the validity of the marriage was not admitted.

Fred Jordan, the appellant, testified that he married testatrix in Washington County on May 24, 1944, and certificate to that effect is in evidence. He testified that after their marriage they lived together until the death of testatrix in 1958; that they had lived in Chickasaw; Chatom; Palestine, Texas; Chatom; Mizell, Mississippi; near Wagarville, Alabama; and then in Chatom until death of testatrix; that he had seen Arthur Stevens one time since 1944; that appellee, daughter of testatrix, had been in the home of appellant and testatrix "Lots of times"; and that he, appellant, had first heard the accusation that he and testatrix were not married on the day the will was supposed to be probated. With reference to records of a divorce of testatrix and Stevens, appellant testified as follows:

"Q. Have you ever seen a divorce decree between Armina Stevens and Arthur Stevens? A. No, sir.

"Q. Have you made diligent search for one? A. No, I didn't. I have since this trial started.

"Q. You have investigated in almost all the counties in which Armina has lived? A. Since I knew her, yes.

"Q. And you do not find in any of those counties a divorce proceeding between Armina and Arthur Stevens; a decree of divorce divorcing them? A. No, sir.

"Redirect examination by Mr. Turner:
"Q. Mr. Hurst is putting words in your mouth, isn't he?

"Judge Pelham: I strike that remark.

"Q. Did you make these investigations yourself? A. No, I didn't.

"Q. You are not trained in searching the records to determine whether or not there have been any divorce proceedings, is that right? A. I looked for some in different places.

"Q. Do you know how to search the records for a divorce? A. No, sir, I had to get somebody at the courthouses to do it for me.

"Q. You have done none of it yourself? A. No, sir."

Monette Copeland, appellee, testified that she was born in 1925, that her parents, Arthur Stevens and the testatrix, separated when appellee was nine or ten years old; that she, the appellee, until her own marriage in 1941, lived with the testatrix, and thereafter visited her "every three or four weeks"; that appellee had no knowledge of her mother's ever getting a divorce from Stevens, but "knew all along that she wasn't divorced from him." Appellee admitted that she filed a sworn petition to probate the will of testatrix. The petition is dated July 28, 1958, and recites in pertinent part as follows:

"Your petitioner herewith propounds said will in which she believes that she is named as legatee and devisee and as executrix. Your petitioner further represents that the names, ages, and residences of the next of kin are as follows:

"1. Fred J. Jordan, husband of deceased, over the age of 21 years, and a resident of Washington County, Alabama."

In answer to a question whether or not testatrix could have gotten a divorce from Stevens without appellee's knowing about it, appellee replied:

"A. While ago I explained to you I don't know. She could have or she could not."

This court has refused to accept the uncorroborated testimony of one of the parties to the prior marriage, to the effect that the prior marriage had never been dissolved by divorce, as being sufficient

proof to establish the dissolution of the prior marriage when the evidence did not show an examination of the records of the divorce courts of the counties in which the parties had lived. Freed v. Sallade, supra; Dorsey v. Dorsey, 256 Ala. 137, 53 So.2d 601. On the second appeal in Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135, however, the court held that the corroborating evidence was sufficient where the other party to the undissolved marriage refused to testify and the evidence showed that the divorce records in the counties where the parties had lived disclosed no divorce. In Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813, the testimony of the wife in the prior marriage was corroborated by evidence that the records in Jefferson County, where the husband had lived, showed no divorce, and this was held to be sufficient to support a finding that the prior marriage had not been dissolved by divorce. In Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166, the testimony of the prior wife that the prior marriage had never been dissolved by divorce was corroborated by evidence that the records of four counties where the husband had lived did not show a divorce, and this evidence was held sufficient to rebut the presumption in favor of the subsequent marriage.

The law casts a strict burden on appellee to prove a negative, that is, that testatrix and Arthur Stevens had not been divorced. Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135, supra; Vinson v. Vinson, 260 Ala. 254, 258, 69 So.2d 431. The testimony of the parties, not properly supported by evidence as to the divorce records in the various jurisdictions in which a decree could be rendered, is usually treated as not sufficient to overcome the presumption. Ashley v. Ashley, 255 Ala. 313, 319, 51 So.2d 239. However, such record evidence of non-divorce has not been regarded as an indispensable element of such proof in every case. Jones v. Case, 266 Ala. 498, 97 So.2d 816. The situation in Whitman v. Whitman, 253 Ala. 643, 46 So.2d 422, was like the situation here. The wife of the

prior marriage, like Arthur Stevens here, testified that she knew of no divorce proceedings, but there was no evidence offered as to the status of the divorce records in Jefferson, one of the counties where the husband had lived, and the offered evidence as to the other county, Dallas, was held inadmissible. This court held there was no error in the decree denying relief to the first wife. Denial of relief was based on insufficiency of the evidence to overcome the presumption that the last marriage was valid. As to the testimony of the first wife that the prior marriage had not been dissolved this court said:

"* * *. Her own testimony to that effect must be supported by legal evidence that the divorce courts of all the counties in the State, which would have jurisdiction of such a suit, did not have a record of a decree of divorce. * * *." 253 Ala. 643, 645, 46 So.2d 422, 424.

Appellee argues that the testimony of four witnesses (Arthur Stevens, Walter Wright, and appellee and appellant) is sufficient to sustain the finding that the marriage of testatrix and Stevens had never been dissolved by divorce. We do not agree.

Arthur Stevens' testimony is to the effect that he never obtained a divorce and does not know whether testatrix obtained one or not. Even if the testimony of Stevens be considered as positive that no divorce was obtained by either himself or testatrix, it would not, standing alone, be sufficient under Freed v. Sallade, supra, and the first appeal in Dorsey v. Dorsey, supra. Moreover, the action of Arthur Stevens in marrying his present wife, Callie Guynn, is not consistent with his testimony that he had never been divorced from testatrix. By his subsequent marriage, he solemnly declared that he was then free to marry again. Freed v. Sallade, 245 Ala. at page 508, 17 So.2d 868.

At best, the testimony of appellee and Walter Wright shows merely that these witnesses had no knowledge of a divorce.

As appellee admitted, testatrix could have gotten a divorce without appellee knowing about it. After the death of testatrix, appellee had stated under oath in the petition to probate the will that appellant was the surviving husband of testatrix. After Stevens and testatrix separated, Walter Wright married her and later obtained a divorce in the court of Washington County. The actions of appellee and Wright are based on the proposition that Stevens and testatrix had been divorced and are diametrically opposed to the contrary inference which appellee draws from their testimony.

■ The testimony of appellant concerning his investigation of records falls short of establishing the fact that no divorce is shown by the records of the several counties in which testatrix and Stevens are shown to have lived after they separated. Appellant admitted he did not in his own person make the search and that he was not qualified to do so. We are of opinion that the testimony of appellant is not sufficient to establish as a fact that the records in all the counties where the parties had lived do not show a divorce of testatrix from Stevens. The testimony of appellant is that he had to get some one else at the courthouse to make the search and did none of it himself. All his testimony that the records do not show a divorce is hearsay and is not competent to show the absence of a divorce decree. Smith v. Smith, 268 Ala. 348, 106 So.2d 260. Act No. 101, General Acts 1943, page 105; Pocket Parts, Code 1940, Title 7, § 372(1). Moreover, the testimony is that he investigated "almost all," and not all, the counties involved.

■ We do not wish to be misunderstood on the holding that appellant's testimony with respect to his investigation is hearsay. This testimony is hearsay because he is repeating the statement of some one else who had told him that the records contained no divorce decree. His testimony is not hearsay for the reason that it is an attempt to prove the contents of a decree by parol. Hereafter in this opinion we express the view that appellant cannot, by parol, prove the existence or contents of a decree until proper predicate for secondary evidence has been laid. Parol testimony of the existence or contents of a decree is not the best evidence of its existence or contents. The fact that a decree does not exist is a different matter. Parol testimony to the effect that a decree does not appear in a record is not parol evidence of something a record contains. Such parol testimony is evidence that a record does not contain something, to wit, a divorce decree. In a strict sense, the record is the best evidence of what it does not contain, but it is manifestly impractical to require a party to introduce in evidence all the records of a court, or certified copies thereof. Competent, legal testimony given in answer to interrogatories by the register, custodian of the records of Barbour County, that a certain divorce decree did not appear in his records, was admitted to prove that fact on the second trial in Dorsey v. Dorsey, supra, 259 Ala. at page 223, 66 So.2d 135. The reason for allowing parol testimony to prove that records do not contain a divorce decree has been stated as follows:

"* * * 'The law requires the best proof the case is susceptible of. It does not require impossibilities, and therefore did not require the production in our courts of the records of the courts of a sister state. Where there is a mass of records to examine, the law does not require the production of certified copies of all of them to prove the negative fact that a certain decree cannot be found. Such proof may rest in parol ex necessitate rei. But there should and could have been furnished the testimony of the custodian of those records, or of other persons who qualified as familiar with them and all of them, in order that the negative fact might be clearly shown. * * *'" Note in 34 A.L.R. 495, quoting from Nelson v. Jones, 245 Mo. 579, 151 S.W. 80.

The testimony relating to the suits begun by appellant in Memphis and by testatrix in Waynesboro certainly fails to establish the fact that a divorce was granted, but it strongly supports an inference that divorce proceedings were instituted. A satisfactory conclusion as to whether those suits were actually instituted and, if so, as to their result, can hardly be reached on the record before us. We are clear to the conclusion that appellee has not proved that a divorce was not granted in either suit.

We will summarize the pertinent facts appearing from the record. Testatrix and Stevens married each other in 1916; they had six children of whom three were still living; they lived together until 1931 or 1932 when they permanently separated. Stevens made some move to initiate a suit for divorce in Memphis and testatrix did the same thing in Waynesboro, but the result of neither suit is shown. In 1936 testatrix married Arthur Wright and they were later divorced. In 1944 testatrix married appellant and lived with him until her death in 1958. Arthur Stevens married Callie Guynn in 1948 and was living with her in Florida at the time of the trial. Stevens, Wright, and appellee testified that they did not know of any divorce between Stevens and testatrix, and appellee emphatically states that she knows they were not divorced.

If their testimony be taken as positive to the effect there was no such divorce, it is nevertheless contradicted by their several actions, i. e., by Stevens in marrying Guynn, by Wright in marrying and divorcing testatrix, and by appellee in swearing that appellant was the surviving husband.

█ It may be that the records of all the counties concerned do not show a divorce of testatrix from Stevens, but we are of opinion that the evidence now before us is insufficient to establish that fact. Consequently, we are of opinion that appellee has failed to support the burden that rested on her to prove that the prior marriage had not been dissolved, and that

the decree finding to the contrary is in error, for which it must be reversed and the cause remanded in order that the parties may present further proof as they may be advised.

Appellee cites Darrow v. Darrow, 201 Ala. 477, 78 So. 383, which appears to hold that evidence of a prior marriage and testimony by a party thereto that no notice of divorce had been served on such party prima facie, negatives a dissolution of the prior marriage; and, further casts on the opposite party seeking to sustain the later marriage the burden to show a record of a decree dissolving the prior marriage. We have not found where this holding in the Darrow case has been cited or followed. It appears to be in conflict with Freed v. Sallade, Ashley v. Ashley, the first appeal in Dorsey v. Dorsey, and Vinson v. Vinson, all supra; and to the extent that it is in conflict with the later cases, the Darrow case is overruled.

As we understand appellee's brief, she concedes that appellant's objection to introduction in evidence of the Mississippi certificate of the marriage of testatrix to Stevens is well taken, but says it is error without injury. Because it thus appears that on another trial appellee will remove the grounds of this objection we forego its further consideration.

Appellant offered to prove by himself that testatrix, in her lifetime, had told appellant that she had a divorce from Stevens. The court sustained objection to this evidence and that ruling is assigned as error.

█ A party who is to prove a fact must do it by the highest evidence of which the nature of the thing is capable, and which it is within his power to produce. Although the court of a justice of the peace is not a court of record, our court has held that a party could not prove by the justice himself the result of a suit in his court, where the proceedings had been reduced to writing, without first laying a predicate for the introduction of secondary evidence; Bullock v. Ogburn,

13 Ala. 346. Even a judgment certificate made by the clerk for registration in the office of the judge of probate cannot be substituted for the judgment itself where the issues call for proof of the fact of an existing judgment; Boasberg v. Cooke, 223 Ala. 389, 136 So. 797. In the absence of a predicate for secondary evidence, as was the case here, testimony of testatrix herself would not have been admissible to prove a decree dissolving her marriage to Stevens. See Cotton v. Cotton, 213 Ala. 336, 104 So. 650. Therefore, the court did not err in refusing to allow appellant to testify that testatrix had said she had a divorce from Stevens. For cases supporting this view, see McDonald v. McDonald, 180 Ga. 771, 180 S.E. 815; Trimble v. Wells, 314 Ky. 206, 234 S.W.2d 683; Weaver v. Patterson, 92 N.J.Eq. 170, 111 A. 506; Moore v. Follett, Tex.Civ.App., 11 S.W.2d 662; Hupp v. Hupp, Tex.Civ. App., 235 S.W.2d 753. Two California cases, In re Smith's Estate, Cal.App., 193 P.2d 90, and 33 Cal.2d 279, 201 P.2d 539, appear to be contrary to our conclusion here, but we are persuaded that the California rule is not the better one.

Reversed and remanded.

All the Justices concur.